CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   FAX: (415) 436-7234
   leif.dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CALEB ELLER, <br><br> Defendant. | CASE NO. 21-CR-311 YGR <br><br> **UNITED STATES' SENTENCING MEMORANDUM** |

## I. INTRODUCTION

The government submits this memorandum in advance of the combined change of plea and sentencing hearing for defendant Caleb Eller. Eller is expected to plead guilty to one count of Conspiracy to Commit Hobbs Act Robbery in violation of Title 18, United States Code, Section 1951(a), based on his agreement to obtain money or property from a residence in Union City, California. The parties have entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). Pursuant to that agreement, the government respectfully requests that the Court impose a sentence of 24 months, to be followed by three years of supervised release.

## II. FACTUAL BACKGROUND

### A. Procedural History

On August 12, 2021, a federal grand jury returned a three-count indictment charging six defendants, including Caleb Eller, with (1) Hobbs Act Conspiracy (Count One); (2) Conspiracy to Commit Murder in Aid of Racketeering (Count Two); and (3) Conspiracy to Commit Assault with a Deadly Weapon/Assault Resulting in Serious Physical Injury in Aid of Racketeering (Count Three). ECF No. 1; Presentence Investigation Report ("PSR") at ¶ 1. Eller is charged only in Count One. The indictment alleges the defendants' membership and/or affiliation with a racketeering enterprise known as "El Hoyo Palmas" (EHP), an associated-in-fact group consisting of Norteño street gang members and associates. At the upcoming hearing on November 20, 2025, Eller is expected to plead guilty to Count One.

### B. Offense Conduct & Other Relevant Conduct

#### 1. Background of El Hoyo Palmas[1]

EHP is subservient to the Nuestra Familia (NF) prison gang and, specifically, the Santa Clara County Regiment of the NF. PSR at ¶ 18. EHP has been in existence in San Jose since the 1970s. PSR at ¶ 18. EHP has its own logos, tags, hand gestures, and terminology to designate themselves in public settings, such as the letter "P" or the word "Palmas," the logo of the Pittsburgh Pirates professional

---

[1] This factual background is included only (1) to provide context to the conspiracy count to which the defendant has pleaded guilty; and (2) to augment the Court's consideration of the defendant's background, history, and characteristics.

U.S. SENTENCING MEMORANDUM RE ELLER      1
21-CR-311 YGR

baseball team, and Hawaiian style shirts with palm trees. Eller was not a member of EHP, but he was an affiliate, as described in more detail below.

The NF and EHP have common purposes, which include: committing crimes of violence to promote and enhance the reputation of the enterprise and to keep rival gang members in fear of it; enriching leaders, members, and associates through trafficking of controlled substances and firearms and through the commission of robberies; and providing financial support to gang members who are charged with crimes or incarcerated. PSR at ¶¶ 12, 16, 19.

### 2.  Underlying FBI Investigation

The FBI utilized multiple wiretaps in the Operation Quiet Storm investigation into the NF and EHP. Regarding EHP, those wiretaps included:

| TELEPHONE USER | TARGET TELEPHONE |
|---|---|
| Juan Dominguez | TT6 |
| Jose Garcia | TT8, TT10 |
| Juan Gonzalez | TT9 |

Much of the evidence supporting the indictment in this case came from these intercepted communications.

### 3.  Union City Robbery Conspiracy

In early September 2018, several members of EHP, including Eller, conspired to rob drug dealers at a residence in Union City. From intercepted communications, the FBI learned of the conspiracy, which they were able to interrupt prior to its commission. PSR at ¶ 21.

The conspiracy began when Eller notified Defendant Garcia of two marks (referred to in the intercepted calls as "licks") in an intercepted call on September 4, 2018. PSR at ¶ 21; TT8, Session 3058. In that call, Eller informed Garcia that in one location the residents "push powder" (slang for cocaine) and said that he believed that by robbing the location, they would be able to "come up" with at least a "brick" (slang for kilogram) as well as money for another brick. PSR at ¶ 21. Garcia asked, "What's the deal with them? We have to knock doors down? Is there an easy way in? Or wait for somebody?" Eller told him that the residents were two brothers who had already been robbed once

before, and so he did not expect them to put up a fight, but that Garcia would have to "boot the door down and get it from them." PSR at ¶ 21; TT8, Session 3058. Garcia responded, "Ok, ok, I don't give a fuck how it goes down." TT8, Session 3058. Eller said he would give Garcia the address of the house, and later texted Garcia "Union City" and "Drives a black Mustang." PSR at ¶ 21; TT8, Sessions 3089, 3091. Garcia then contacted Defendant Kyle Leonis via text message, writing: "I have a job for us" and "I'm a make sure after this you are blessed." PSR ¶ 21; TT8, Sessions 3068, 3070, 3072, 3074. Defendant Leonis later responded that he was "wit whatever boy." PSR ¶ 21; TT8, Sessions 3151, 3154, 3156, 3158, 3160. Eller and Garcia continued to talk about the robbery, with Eller noting that if the two brothers who lived at the robbery mark were "slapped up a bit," they would "give up" the drugs and money. Eller called the planned robbery a "guaranteed go," noting that Garcia just needed to make sure the two brothers lived there ("You just need to make sure they live there, that's it."). TT8, Session 3103. On September 6, 2018, Garcia spoke with Eller and told Eller that Garcia planned to scope out the Union City house that night. PSR ¶ 22.

In the days following, Garcia and others went to Union City to locate the robbery mark and conduct surveillance. For example, on September 10, 2018, Garcia and Defendant Paul Valenzuela discussed going with Defendant Juan Gonzalez to Union City to take a "dry run" at the proposed robbery location. PSR ¶ 22; TT8, Sessions 4259, 4284, 4295.[2] On September 17, 2018, Garcia and Gonzalez discussed additional surveillance that Gonzalez had done of the Union City location, and Gonzalez notified Garcia that he had seen a couple with a baby at the address. TT9, Session 4830. Gonzalez told Garcia that he planned to go back to the address and "post up" (conduct additional surveillance), and both Garcia and Gonzalez discussed "needing this," because things had been "slow" lately. TT9, Session 4835.

On September 19, 2018, Garcia told Gonzalez that Eller had confirmed that the marks were still selling drugs and that there likely was product at the house. They agreed that given that the children appeared to be school-aged, the best time for the robbery would be in the morning after the children

---

[2] Following these intercepted calls, FBI team members conducted physical surveillance and witnessed Garcia, Valenzuela, and Gonzalez meeting up at the robbery location and then stop for food at the In and Out in Union City.

U.S. SENTENCING MEMORANDUM RE ELLER    3
21-CR-311 YGR

were at school. TT9, Session 5337. On September 21, 2018, Eller and Garcia were again intercepted discussing the robbery—Garcia told Eller that "the homies are scoping [the mark] out" and that they planned to do the robbery "maybe this week coming up." Eller responded that "this next week it's going to be good. They're doing everything. Supposedly they got a sample [of white] yesterday and it's good." TT10, Session 67.

### 4. Suspected "Leak"

On September 20, 2018, based on the intercepted calls summarized above, the FBI conducted a search warrant at the Union City residence. On October 2, Eller informed Garcia that federal agents had gone to the house. PSR at ¶ 22; TT10, Session 2754. Eller told Garcia: "Just dead the whole shit and whoever you told. Be smart. Somebody told them . . . ." TT10, Session 2754; *see also* TT10, Session 2831 (further discussion of the search conducted by the FBI and Eller telling Garcia who he suspected was the "leak"). Garcia then called both Gonzalez and Defendant Juan Dominguez to tell them that the planned robbery was off. TT10, Session 2764 (Garcia tells Dominguez: "The fucken alphabet boys got that address. You know the one."). Garcia suspected that there was a "loose screw" (i.e., an informant) in their crew. TT10, Session 2764, 2794. By October 14, intercepted communications revealed that Garcia believed that he had identified Victim-1 as the suspected informant. TT10, Session 377 (Garcia says: "("I found the loose screw … it's in my own house"). Subsequent intercepted communications suggested that Garcia assaulted Victim-1 on October 14, and that on October 15, Garcia told Dominguez that Garcia was told by "the homie" that Victim-1 needed to be "let go." TT6, Session 19315. That same day, Garcia told Leonis that Victim-1 was a "rat." TT10, Session 516. On October 16, 2018, Victim-1 did not show up for work and cut off contact with Garcia, Dominguez, Gonzalez, Leonis, and Valenzuela. Over the next two days, Garcia made multiple intercepted calls to fellow gang associates showing that he was looking for the alleged informant. TT10, Session 810 (Call between Garcia and Leonis, where Garcia says that he had someone call Victim-1's workplace to see if Victim-1 was there, and was told that Victim-1 had not come to work, to which Garcia notes: "He's fucking scared for his life, fool."). On October 15, 2018, Garcia was intercepted talking to Taylor Johnston, a suspected associate of EHP and a suspected member of a gang known as the West Side Mob. During the intercepted call, Johnston asked Garcia whether Victim-1 had come back, and Garcia said that he had

not. Johnston said that he could not believe that Victim-1 had not come back and asked Garcia what the neighborhood was saying, to which Garcia said, "it's on sight with him," "even if he comes back."" "On sight" means that EHP members are authorized and expected to use force against the individual who has been targeted by the gang.

### 5. Other Relevant Conduct[3]

The intercepted communications in this case show that Eller was an associate of EHP who was active in drug dealing, gun trafficking, and robberies. The intercepted wires show multiple instances of Eller engaging in drug trafficking with co-defendant Garcia, including instances where Eller and Garcia discussed obtaining and distributing kilogram quantities of methamphetamine (*e.g.*, TT8, Sessions 1046, 1052, 1059, 1063, 1069, 1073, 1075, 1158, and 1163) and cocaine (*e.g.*, TT8, Sessions 1172, 1215, 1581; *see also* TT10, Sessions 105, 107, 203, 242, 283, 286, 292 (intercepted wires regarding conspiracy to distribute one pound of methamphetamine)). The wires also confirm that Eller provided Garcia and other EHP members with connections to obtain firearms, including in Las Vegas. *See* TT8, Sessions 1931, 1936, 1943, 2546, 2570 (discussing the cost of Glock pistols and Draco rifle pistols and travel to Las Vegas to procure additional guns).

## III.  ELLER'S CRIMINAL HISTORY

Eller has a 2008 felony conviction (assault with a firearm); a 2014 felony conviction for carrying a concealed firearm as a felon; and a recent conviction for an armed home invasion robbery that took place on July 13, 2020 in Baldwin Park, California.[4] The government agrees with Probation's calculations that Eller's total criminal history score is 10, which places him in a Level V Criminal History Category. PSR ¶¶ 38-46.

---

[3] The below information is directly relevant to the charged conduct and to Eller's history and characteristics and is therefore properly considered by the Court. *See* U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Danielson*, 325 F.3d 1054, 1076 (9th Cir. 2003) ("A district court may consider uncharged conduct for sentencing purposes when the conduct is relevant within the meaning of § 1B1.3(a)(1) of the Sentencing Guidelines.").

[4] The 2020 Baldwin Park robbery occurred before Eller was charged in the instant federal robbery case, but he was not transferred to Los Angeles County to face that charge until he was arrested on his federal case. His resultant custody in Los Angeles was what led to the delay in the resolution of this matter.

## IV. SENTENCING RECOMMENDATION

Consideration of the sentencing factors set forth in Title 18, United States Code, Section 3553(a) demonstrates that a 24-month sentence for Eller is sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a), paragraph (2). The Court previously imposed that sentence for co-defendants Garcia and Dominguez in this case.

Eller's offense was dangerous and, but for the FBI's intervention, his actions would have posed great peril to those he marked for the robbery and to those in the surrounding community. Eller was aware that Garcia planned to act on Eller's tip and that Garcia was willing to use force and did not "give a fuck how it goes down." Once the robbery plot was thwarted, Eller immediately notified Garcia and warned Garcia that there must have been a "leak" in Garcia's crew because Eller had not told anyone else about the plan. Eller also gave his view on who he thought was the leak. *See* TT10, Session 2831. The crime at issue is no doubt serious and deserving of a custodial term to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence to similar criminal conduct being contemplated by others. 18 U.S. Code § 3553(a)(2). This is particularly true given Eller's criminal history, which shows a pattern of him participating in these sorts of robberies and the need for specific deterrence. *See* PSR at ¶ 43.

The government's recommended sentence is a downward variance from the advisory Guidelines range of 51-63 months. *See* PSR at ¶ 76. But the government believes that is appropriate for several reasons. First, while his transfer to Los Angeles delayed entry of his guilty plea here, Eller indicated early in the case (before any cooperators were identified) that he was prepared to acceptance of responsibility. Second, though complicated by his Los Angeles case, he performed well during his eight months of pretrial release in this case, which included demonstrated efforts at rehabilitation. *See* PSR at ¶ 56. Third, he suffered various traumatic events in his childhood which may have contributed to his choices to engage in criminal activities. *See* PSR at ¶¶ 61-64. Finally, Eller is the last defendant in his case to be sentenced, so it is particularly important "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Eller's co-defendants have been sentenced to terms ranging from time served to 24 months, and each of those co-defendants was charged with two additional counts for conspiring to murder and

assault a suspected informant. *See* ECF Nos. 122 (Garcia Sentencing Memorandum); 133 (Dominguez Sentencing Memorandum); 168 (Gonzalez Sentencing Memorandum); 195 (Leonis Sentencing Memorandum). As such, a sentence of greater than 24 months for Eller would be disproportionate to his relative conduct.

## V. CONCLUSION

For the reasons set forth above, the government requests that the defendant be sentenced to 24 months of imprisonment followed by three years of supervised release.

DATED: November 5, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_____/s/_____
LEIF DAUTCH
Assistant United States Attorney

U.S. SENTENCING MEMORANDUM RE ELLER   7
21-CR-311 YGR